**In re E.A. NORD COMPANY, INC., Debtor.**

**Bankruptcy No. 86–01113.**

United States Bankruptcy Court, W.D. Washington.

Aug. 10, 1987.

Jack J. Cullen and John R. Rizzardi, Hatch & Leslie, Seattle, Wash., for E.A. Nord Co., Inc.

Bruce D. Corker, Perkins Coie, Seattle, Wash., for Bd. of Trustees of the Western Council PLIW—Timber Operators Council Pension Fund.

OPINION ON MOTION TO ENFORCE ARBITRATION AWARD AND TO CLASSIFY CLAIMS AS UNSECURED

SAMUEL J. STEINER, Chief Judge.

### FACTS AND ISSUES

The debtor, E.A. Nord, was a party to a collective bargaining agreement with LPIW Local 1054 which expired in June of 1983, at which time Nord ceased making contributions to the Western Council LPIW–Timber Operators Council Pension Fund (the Fund). Thereafter the Fund assessed a withdrawal liability against Nord in the sum of $3,664,501.51. Nord contested the liability and on December 11, 1985, initiated an arbitration proceeding under the Employment Retirement Security Act, 29 U.S.C. § 1401 et. seq., as amended by the Multiemployers Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1405.

This Chapter 11 case was filed on February 18, 1986. The Fund filed its claim in the sum of $3,664,501.51. On July 8, 1986, the debtor's plan of reorganization, which in part involved a sale of its assets, was confirmed. On July 29, 1986, Nord objected to the Fund's claim.

Thereafter the Court granted the Fund relief from the automatic stay to proceed with the arbitration in order to liquidate the claim. On April 11, 1987, the arbitrator made his written findings and award in which he sustained the Fund's position for the full amount of its claim.

In addition, the arbitrator found that Nord's contentions as outlined in its demand for arbitration were legally frivolous when initially raised. The arbitrator also found that for four years Nord contended that it improperly made contributions to the Fund on behalf of non-bargaining unit employees because no written agreement existed which required such contributions. Nord's attorney discovered such an agreement in Nord's files on February 18, 1986. The arbitrator found that because of Nord's position that an agreement did not exist, the Fund was forced to spend time and money to respond. In short, the arbitrator found and concluded that Nord's position was frivolous throughout the proceeding and for that reason exercised the discretion given to him by 29 U.S.C. § 1401(b)(2) by awarding attorney's fees and costs to the Fund.

The Fund has moved to confirm the arbitration award. There is no issue as to the principal of the claim. Accordingly, that portion of the award will be confirmed, and the claim of the Fund is approved and allowed as an unsecured claim in the sum of $3,664,501.51.

The Fund is also seeking to have its attorney's fees and costs totalling $21,159, all of which accrued post filing, as well as the arbitrator's costs of $1,398 be adjudged administrative expenses. In response, Nord has moved that the attorney's fees and costs as well as the arbitrator's expenses be established as unsecured claims.

The precise issue before the Court is whether an award of fees and costs as a result of frivolous claims litigation by a debtor-in-possession is an administrative expense or an unsecured claim.

The Fund contends that Nord made a conscious decision to pursue frivolous litigation which resulted in the imposition of fees and costs pursuant to the statutory authority of the arbitrator, and that such an award must be deemed to be in the interest of the estate and is therefore an administrative expense. The Fund also urges that frivolous contentions made by a debtor-in-possession under Title 29 of the United States Code must be discouraged,

and that the best way of doing so is to make an award of fees and costs an expense of administration. Finally, the Fund argues that the award should be adjudged an administrative expense as a matter of equity.

On the other hand, Nord contends that by proceeding with the arbitration it was merely exercising its right to determine the amount of a pre-petition claim. Nord also argues that as to claims litigation in bankruptcy the status of ancillary obligations such as attorney's fees and costs depends on the status of the primary debt. In short, if the litigation involved a pre-filing claim, an ancillary award such as attorney's fees assumes the same character; that is, it is part of the pre-filing claim and cannot therefore be an expense of administration. In support, Nord cites *In re Hunter*, 771 F.2d 1126 (8th Cir.1985). Finally, Nord contends that the award of fees and costs is of no benefit to the estate and therefore cannot be considered an expense of administration.

### DISCUSSION

Section 503(b) of the Code defines administrative expenses as "actual, necessary costs of preserving the estate". Such expenses are entitled to a first priority of distribution. § 507(a). The policy of granting an administrative expense priority, particularly in the Chapter 11 context, is to encourage third parties to provide goods and services to a bankruptcy estate and to compensate those who have done so and who have expended new resources in an effort to rehabilitate the estate.

It is clear that the fees and costs of the Fund and the expenses of the arbitrator did nothing toward the preservation of Nord's estate. It is also clear that the Fund did not expend its resources to facilitate reorganization. Nord's other contentions that a debtor-in-possession has a fiduciary obligation to adjudicate claims and that awards ancillary to a claim assume the same character as the claim (pre- or post-filing) are ordinarily the law.

However, there are a number of cases involving post-filing activities of a trustee or debtor-in-possession where the facts did not specifically come within the administrative expense definition of § 503(b), but wherein the Courts adjudged the damage to the other party as an administrative expense. These cases generally involved a breach of a statute, an order or the trustee's duty to the estate and/or its creditors.

In *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), a realty company filed a petition for arrangement under Chapter XI of the Bankruptcy Act. A fire destroyed property of the petitioning claimants after a receiver had been appointed to operate the business. The Court found the fire resulted from the receiver's negligent operation of the business, and awarded claimants an administrative expense claim for the property damage arising out of these negligent acts.

An administrative claim resulted in *Yorke v. N.L.R.B.*, 709 F.2d 1138 (7th Cir. 1983) when the Court found the bankruptcy trustee expressly violated unfair labor practice provisions of the National Labor Relations Act. In *In re Charlesbank Laundry, Inc.*, 755 F.2d 200 (1st Cir.1985), the First Circuit held a civil fine to be an administrative expense where the fine arose from the debtor-in-possession's post-petition violation of a state court injunction.

Several cases have arisen in the area of environmental clean-up post bankruptcy. The Bankruptcy Court for the Northern District of Ohio ruled in *In re T.P. Long Chemical*, 45 B.R. 278 (Bankr.N.D.Ohio 1985) that liability imposed by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) for costs incurred by the Environmental Protection Agency in clean-up of hazardous waste which was property of the estate was an administrative expense. The Court reasoned that the expense was a necessary cost of preserving the estate because removal of the waste was the estate's obligation under CERCLA. In coming to the same conclusion, the Court in *In re Stevens*, 68 B.R. 774 (D.Me.1987) further noted that the benefit to the estate in incurring clean-up expense post-filing is in

bringing the estate into compliance with state and federal law and by protecting the estate from increased liability which could result in the event of a spill. See also *U.S. Department of Interior v. Elliott,* 761 F.2d 168 (4th Cir.1985) (post-petition violations of Surface Mining Control and Reclamation Act were held to be administrative expenses); *In re Vermont Real Estate Inv. Trust,* 25 B.R. 804 (Bankr.Vt.1982) (city's costs in removing dangerous building which was property of Chapter 7 estate was a cost of preserving the estate); and *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) (an inference can be drawn from this case that had the money judgment arising from violations of the state's Environmental Protection Act arisen post-petition, the Court would have considered it as an administrative expense).

In short, the Courts have found an administrative expense liability where the debtor has by its post-petition conduct violated a court order or statute. In this case, the debtor has violated a duty to its creditors by engaging in frivolous litigation. Inasmuch as the arbitrator's award of fees and costs was based on and included only post-petition conduct, it is entitled to an expense of administration status.

The argument has been made that adjudging the award, which was of no direct benefit to the estate, as an administrative expense will decrease the dividends to other creditors. However, whatever monetary harm results to Nord's other creditors is outweighed by the critical need to discourage parties from wasting valuable time and causing needless expense. It is fundamental to our judicial system that courts at every level have the duty, obligation, and responsibility to discourage frivolous litigation. The implementation of such policy may demand, as in this case, that the expense of such conduct be adjudged an administrative expense. If anyone is to suffer, it is better that the burden be sustained by the creditors rather than by the judicial system.

### CONCLUSION

1. The award of the arbitrator in the principal amount of $3,664,501.51 will be confirmed, and the claim of the Fund will be allowed as a general unsecured claim in that amount.

2. The fees and costs of the Fund in the total amount of $21,159 and the costs of the arbitrator in the sum of $1,398 will be adjudged to be administrative expenses in this cause.

3. Counsel for the Fund will prepare and present an Order on appropriate notice to the debtor and to counsel for the creditors' committee.