**In re EXECUAIR CORPORATION, a California Corporation, Debtor.**

**Bankruptcy No. LA 88–01881–GM.**

United States Bankruptcy Court, C.D. California.

April 9, 1991.

Maureen McGuirl, David Horne, Gibson, Dunn & Crutcher, Los Angeles, Cal., for creditor, Whittaker.

James Yobski, Office of the U.S. Trustee, Los Angeles, Cal.

Earle Hagen, Hagen, Hagen & Hagen, Encino, Cal., Marian H. Tully, West Covina, Cal., for debtor-in-possession.

Stephen L. Burton, Los Angeles, Cal., for Creditors' Committee.

## MEMORANDUM OF OPINION ON MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE

GERALDINE MUND, Bankruptcy Judge.

Whittaker Corporation and Whittaker Controls, Inc. moved the Court for an order to compel payment of administration expense alleging that the attorneys' fees and costs ordered by the District Court in *Whittaker Corporation and Whittaker Controls, Inc. v. Execuair Corporation, et al.,* Civ. 85–4855–LEW is an administrative expense of this Chapter 11 proceeding and should be fixed and paid at the same time as other administrative expenses. This motion was opposed by the United States

Trustee, the debtor-in-possession, and the official creditors' committee.

The hearing was held on February 14, 1991, at which time the Court took the matter under submission. The Court, having reviewed the papers and evidence and having heard oral argument, hereby gives this memorandum of opinion, which shall be the findings of fact and conclusions of law.

## FACTS

In 1985, Whittaker Corporation and Whittaker Controls, Inc. ("Whittaker") filed suit in the District Court against Execuair Corporation (debtor herein), Execuair Sales Corporation, Lawrence S. Manhan (debtor in a related Chapter 11 case) and David Manhan and obtained injunctive relief preventing the defendants from selling certain aircraft parts. This was apparently a companion case to a criminal action in which the debtor was found guilty of counterfeiting certain Whittaker Aircraft parts and of infringing on trademark. A permanent injunction was issued in November, 1986. It is contended that the defendants violated the permanent injunction and, on August 19, 1987, Whittaker brought an action before the District Court for contempt. Many, but not all, of the parts were seized by the marshal. The debtor ceased doing business and, on January 29, 1988, filed for relief under the Bankruptcy Code.

Since filing the bankruptcy, the debtor-in-possession has not conducted any of its regular business. It has sold one piece of property and approximately $80,000.00 in proceeds from that sale remain in the estate. Since filing, the debtor has continued to oppose the contempt action. On December 15, 1989, the Honorable Laughlin Waters, United States District Judge, found debtor and others to be in contempt of the previous injunction and determined that Whittaker would be entitled to its attorneys' fees. A second contempt finding was entered November 16, 1990. On August 30, 1990, Judge Waters ordered the defendants to pay Whittaker $607,327.71 for investigating the violations of the injunction and preparing for and participating in the contempt hearings. (Findings of Fact, etc., entered August 31, 1990, page 8, lines 20–24).

Although this Court is not fully conversant with the relationship between Whittaker and the debtor, it is contended by the debtor that if it is successful in setting aside the injunction and/or selling the blueprints, it will net the estate $115,000,000.00. If it is unsuccessful, the sole asset of the estate may be the $80,000.00 that is currently in the attorney's account.

On March 19, 1990, this Court approved the employment of Marian Tully as special counsel for appeal to the Ninth Circuit on the District Court action concerning Whittaker. On December 21, 1990, this Court approved professional fees to be distributed to Ms. Tully, Mr. Hagen (attorney for debtor-in-possession in the bankruptcy) and Mr. Knell (attorney for the creditors' committee). If the Court were to allow Whittaker's motion to compel payment of its claim as an administrative expense, Whittaker would share equally with these attorneys, the entire $80,000.00 would be distributed, and the attorneys would receive less than 20% of their approved fees to date and would be on a complete contingency for all future fees.

The basis of Whittaker's assertion that the attorneys' fees awarded by Judge Waters should be an administrative claim is that the opposition by debtor in the contempt case was part of the debtor's ongoing business and that the opposition was frivolous and therefore tortious. Whittaker claims that it should have an administrative priority for the portion of its fees which were incurred on or after January 29, 1988 (date of bankruptcy), in the amount of $469,277.60. The balance of the fee award would be an unsecured claim. Whittaker bases this contention on the case of *Reading Company v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

## BASIS OF THE ATTORNEYS' FEE AWARD IN THE DISTRICT COURT

■ At the hearing, the Court was advised by counsel for Whittaker that the District Court action was based on a viola-

tion of a Federal statute which provides attorneys' fees only for the plaintiff. Therefore, if Execuair had prevailed in the contempt action, no attorneys' fees would have been awarded to it. However, it appears that the attorneys' fees were granted under 15 U.S.C. § 1117, which allows the Court "in exceptional cases" to award reasonable attorneys' fees to the prevailing party. This provision of the Lanham Act was added in 1975 so that certain victims of infringement can be made whole and also to protect defendants against unfounded suits brought by trademark owners for purpose of harassment. *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 771 F.2d 521 (D.C.Cir.1985). Attorneys' fees are awarded to plaintiffs in cases in which infringement was malicious, fraudulent, wilful or deliberate. *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820 (7th Cir.1984).

## STATUTORY AND CASE LAW

An administrative expense allowed under 11 U.S.C. § 503(b) is the highest priority claim to be paid in a bankruptcy case. 11 U.S.C. § 507(a)(1). In a Chapter 11 reorganization, the holder of such a claim must receive on the effective date of the plan cash equal to the allowed amount of the claim. 11 U.S.C. § 1129(a)(9)(A). In a Chapter 7 liquidation, administrative claims are paid in full before any other distribution may be made. 11 U.S.C. § 726(a)(1).

An administrative claim is defined in 11 U.S.C. § 503(b)(1)(A) to include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...." Section 503(b)(1)(A) is derived from § 64 of the Bankruptcy Act of 1898, as amended in 1962, which stated that there was a priority for debts which were "... the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate, subsequent to filing the petition...."

In 1968, the case of *Reading v. Brown, supra,* was decided by the Supreme Court. In that case, the debtor filed a petition under chapter XI and the District Court appointed a receiver, who was authorized to conduct the debtor's business. The only significant asset of the debtor was an eight story industrial structure, which the receiver intended to lease. About six weeks after the bankruptcy was filed, the building was destroyed by a fire which spread to the adjoining premises and destroyed other real and personal property. The abutting owners filed administrative claims in the arrangement. These claims totalled substantially more than the total assets of the debtor. The debtor was voluntarily adjudicated a bankrupt and the receiver was elected trustee in bankruptcy. The trustee moved to expunge the claims on the ground that they were not for expenses of administration. The Supreme Court reversed the lower court opinions and determined that the claimants were entitled to be treated as administrative creditors. The Court held that "damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to 'actual and necessary costs' of a Chapter XI arrangement." 391 U.S. at 485, 88 S.Ct. at 1767.

In reaching this decision, the Court reasoned that the receiver was operating the business in the hope that existing creditors would receive a partial or complete recovery on their claims due to a successful rehabilitation. The court felt that it was not fair that those injured by the operation of the business during the arrangement should be forced to share equally with those for whose benefit the business was being conducted. For that reason it deemed that the damages resulting from the fire would be administrative claims and would be paid in full before claims by unsecured creditors.

After the *Reading* decision, the Bankruptcy Code was completely revised and Congress made no substantial changes in the definition of an administrative claim. Had they chosen to do so, Congress could have defined administrative expense so as to overrule the *Reading* case. It is presumed that they were aware of this case at the time that the Code was enacted. *In re*

*Tenna Corp.*, 801 F.2d 819, 823 (6th Cir. 1986). In fact, it appears that they broadened the concept of administrative claim by using the word "including" to demonstrate that the sub-parts of § 503(b)(1) are examples and not limitations of what can be determined to be an administrative claim.

Many cases have cited *Reading* and it has been expanded beyond the tort context. For example, in *Yorke v. N.L.R.B.*, 709 F.2d 1138 (7th Cir.1983), *cert. denied*, 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984), *Reading* was used to support the proposition that those injured during the administration of the estate by the trustee are entitled to an administrative priority, even if there was no tort or other wrongdoing. *Yorke* at 1143. Several courts have applied *Reading* to awards of attorneys' fees and costs resulting from frivolous litigation by the trustee. *In re Met–L–Wood Corporation*, 115 B.R. 133 (N.D.Ill.1990).

*In re Charlesbank Laundry, Inc.*, 755 F.2d 200 (1st Cir.1985) is similar to the *Execuair* matter in that it concerned a civil compensatory fine for violation of an injunction by a debtor corporation engaged in a Chapter 11 reorganization. The injunction was to prevent the debtor laundry from committing a private and public nuisance and from violating the zoning ordinances. A preliminary injunction issued, which the debtor ignored. The plaintiffs brought an action in the state court seeking damages and injunctive relief for violation of the prior injunction. Shortly before this action was to be tried, the debtor filed a Chapter 11 petition.

The matter was settled and a consent judgment was entered which, in part, required the debtor to cease its laundry operations. The court also ordered the debtor to pay plaintiffs a civil compensatory fine in the amount of the attorneys' fees that the plaintiffs had expended in seeking to enforce the prior injunction. Of this $16,-000.00 amount, $11,000.00 was incurred post-petition and the balance was incurred pre-petition. The plaintiffs then sought a determination that the $11,000.00 post-petition amount was an administrative claim.

The First Circuit ruled favorably to the claimants and stated:

"We see no reason why the claim of plaintiffs in this case does not fall within both the letter and the spirit of *Reading*. The same fairness principle favors plaintiffs here, whose premises, lives or businesses were adversely affected by Charlesbank's continuing conduct in violation of the temporary injunction. That the wrong committed by Charlesbank was a violation of an injunction issued in the course of proceedings aimed at enjoining and obtaining damages for the commission of a nuisance does not take it out of the category of a 'tort.' ... If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, *a fortiori*, an intentional act which violates the law and damages others should be so treated." 755 F.2d at 202.

*In re E.A. Nord Co., Inc.*, 78 B.R. 289 (Bkrtcy.W.D.Wash.1987) dealt with frivolous claims litigation. In that case the debtor had demanded arbitration on a claim. The arbitrator found that the demand for arbitration was legally frivolous. The arbitrator held that because the debtor took the position that an agreement did not exist, the claimant was forced to spend time and money to respond. On that ground the arbitrator exercised his discretion by awarding attorneys' fees and costs to the claimant. The claimant then moved to have its attorneys' fees and costs (all of which had accrued post-petition) adjudged as an administrative expense. The court so held and stated as follows:

"The argument has been made that adjudging the award, which was of no direct benefit to the estate, as an administrative expense will decrease the dividends to other creditors. However, whatever monetary harm results to Nord's other creditors, is outweighed by the critical need to discourage parties from wasting valuable time and causing needless expense. It is fundamental to our judicial system that courts at every level have the duty, obligation, and responsibility to discourage frivolous litigation. The implementation of such policy

may demand, as in this case, that the expense of such conduct be adjudged an administrative expense. If anyone is to suffer, it is better that the burden be sustained by the creditors than by the judicial system." 78 B.R. at 292.

## APPLICATION TO THE WHITTAKER CLAIM

The facts of the present case are not exactly identical to any of those previously cited, but contain elements of all of them. As described above, the violation of the injunction occurred pre-petition; however, post-petition Execuair as debtor-in-possession and its creditors' committee vigorously fought the contempt proceedings in the hope that it could overturn the injunction and thereby continue the business operations that had been stopped by the previous rulings of the District Court. It was an attempt to reorganize and to create substantial assets from which the unsecured creditors and the debtor would benefit.

■ The Creditors' Committee would limit this Court to a case where the attorneys' fees were based on a "frivolous defense" and they allege that the defense of the contempt action was not frivolous. Although there is no specific finding by the District Court that the defense imposed by the debtor was totally frivolous, other findings talk of the lack of merit of the defense. For example, Finding 17 of the December 15, 1989 Findings states, "Defendants' impossibility defense is not even remotely justified under the facts and circumstances demonstrated by the evidence presented at trial." Finding 19 states, "[a]s to defendants' substantial compliance defense, the defendants did not even remotely achieve that state of affairs." While some of the defenses of debtor may have been meritorious, these two were clearly frivolous.

However, even if the District Court had not indicated the lack of meritorious defense, *Reading* cannot be interpreted on

such a narrow basis. This Court interprets *Reading* to hold that if the claim for attorneys' fees was incurred post-petition, because of a post-petition act by the debtor-in-possession or trustee which was intended to benefit the estate but which led to the injury of a third party, such attorneys' fees qualify as administrative expenses of the estate so long as the claimant can justify its right to attorneys' fees under law.[1]

Congress had the knowledge and chance to overrule the *Reading* case and limit administrative priorities to exclude this type of claim. It did not do so.

This Court holds that the attorneys' fees and costs ordered by the District Court for post-petition prosecution of the contempt action are administrative claims and must be treated as such. Because the total administrative claims exceed the amount of assets in the estate, no distribution can be made to any administrative creditor at this time.

---

**1.** This Court is not attempting to create a situation which would give a creditor the right to a claim for attorneys' fees merely on the basis that there was a post-petition act that was intended to benefit the estate. The creditor must have a separate legal basis for claiming the fees. In this case, the legal basis is provided by the Lanham Act itself.