**In re Robert SHERIDAN, Debtor.**

**Bankruptcy No. 91 B 8998.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 5, 1994.

---

payment of administrative expenses by this estate for the following: (1) attorney's fees and costs in connection with the defense of a lawsuit brought by entities controlled by the Debtor; (2) management fees paid to entities controlled by the Debtor after BOSP terminated the relevant management agreements; and (3) damages for waste and mismanagement allegedly committed by entities controlled by the Debtor.

BOSP asserts two grounds upon which it seeks to impose liability on this estate for the acts of non-debtor parties: an alleged "fundamental fairness doctrine," and an alter ego theory. For the following reasons, BOSP's request for payment of administrative expenses is denied.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## III. FACTS

In 1987, Edgemont Corporation, wholly owned by the Debtor, Robert Sheridan, entered into a Master Agreement with Robert D. Burch as Trustee of certain trusts.[1] The Master Agreement stated that Edgemont would identify parcels of real estate for acquisition, submit them to Burch for approval, and if approved, the parcels would each be acquired by a newly formed limited partnership ("Owner Partnership"). Burch controlled entities, BOSP Investments and BOMAT Investments, were to be the limited partners.[2] A separate Owner Partnership

Richard M. Bendix, Jr., Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for creditors committee.

Louis W. Levit, Richard T. Mason, Ross & Hardies, Chicago, IL, David Smith, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for debtor.

Janet S. Baer, Winston & Strawn, Office of U.S. Trustee, Robert Newman, Wildman, Harrold, Allen & Dixon, Michael Salvati, KPMG Peat Marwick, Catherine L. Steege, Jenner & Block, Chicago, IL, Raymond J. Wolf, Miami, FL, Melanie Rovner Cohen, Terry Robin Horwitz Kass, Altheimer & Gray, Chicago, IL, for BOSP and BOMAT Investments.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

## I. INTRODUCTION

BOSP Investments and BOMAT Investments (collectively, "BOSP") request the

---

1. Executed concurrently with the Master Agreement was a Guaranty Agreement whereby Sheridan guaranteed payment of an amount equal to fifty percent of any Burch capital remaining unrecovered after liquidation of a Burch Partnership or consummation of "Buy–Sell Rights".

Concurrently with the execution of the First Amendment to the Master Agreement on July 31, 1988 was the execution of the Indemnity Agreement ("Indemnity") whereby Sheridan indemni-

fied Burch against any loses suffered as a result of any acts or omissions of a general partner or manager.

2. For purposes of this opinion, the distinction between BOSP Investments and BOMAT Investments is immaterial. BOSP Investments was the limited partner in some of the Owner Partnerships, and BOMAT Investments in others. But

and Partnership Agreement were created and executed for each new parcel of real estate acquired. Burch provided the funds to capitalize each Owner Partnership.

Each Owner Partnership is owned fifty percent by BOSP as limited partner, and fifty percent by another limited partnership ("Plaintiff Partnership") that acts as the general partner of such Owner Partnership.[3] All the Plaintiff Partnerships are effectively controlled by Sheridan. Each property was to be managed by a management company ("Manager") owned in whole or in part by Sheridan. Certain Partnership Agreements contained "Buy–Sell Rights" that gave BOSP the right to purchase the Plaintiff Partnership's interest in the Owner Partnerships. BOSP elected to exercise its right to purchase the Plaintiff Partnerships' interests in six Owner Partnerships. The Plaintiff Partnerships disputed whether BOSP exercised his buy-sell rights prematurely with respect to two of the Owner Partnerships, and the calculation of the purchase price for the other four Owner Partnerships.

On April 25, 1991, all twelve Plaintiff Partnerships filed a complaint against BOSP in United State District Court for the Northern District of Illinois before Judge James Holderman.[4] Sheridan filed his chapter 11 petition on April 26, 1991. BOSP filed a third party complaint in the district court action against several Plaintiff Partnerships and other entities owned in part by Sheridan seeking recovery for management and accounting fees from the entities. Judge Holderman decided in favor of BOSP on the buy-sell issues. He then entered judgment against the Plaintiff Partnerships on March 17, 1994 in the amount of $1,548,916.75 for attorneys' fees in connection with defense of the district court suit, and on August 25, 1994, in the amount of $1,457,887.00 for management fees wrongfully paid since termination by BOSP of the management agreements.

BOSP filed a Request for Allowance and Payment of Administrative Expenses ("Request") in this case to which the Committee for Unsecured Creditors has objected. In its Request, BOSP seeks to have their district court judgments against the Plaintiff Partnerships for attorney and management fees, and their claim for damages resulting from waste and mismanagement committed by the corporate general partners and managers of the Owner Partnerships, allowed as administrative expenses in Sheridan's bankruptcy case. They base that request on both "fundamental fairness" and alter ego theories.

## IV. ANALYSIS

### a. "Fundamental Fairness"

■ In its "fundamental fairness" argument, BOSP confuses two distinct issues: liability on a claim and the priority of distribution under bankruptcy law to which the holder of that claim is entitled. An administrative claim, like any claim, must be based on some legal duty and a corresponding right to payment.

This is illustrated by the movants' own authorities. In *Reading Co. v. Brown,* the case most heavily relied on by the movants, the claim was based, not on fairness, but on the trustee's own negligence. 391 U.S. 471, 484, 88 S.Ct. 1759, 1766, 20 L.Ed.2d 751 (1968) (damage to the claimant's building was entitled to administrative expense priority because it was caused by a fire that resulted from the Trustee's own negligence and constituted a "cost of doing business"); *c.f. In re Met–L–Wood Corp.,* 103 B.R. 972 (Bankr. N.D.Ill.1989), *aff'd,* 115 B.R. 133 (N.D.Ill. 1990) (debtor's attorneys' fees incurred in the successful defense of suit for wrongdoing brought by the Trustee granted administrative expense priority); *Yorke v. NLRB,* 709 F.2d 1138 (7th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984) (administrative priority granted to

for our purposes, they can be collectively referred to simply as BOSP.

**3.** Each Plaintiff Partnership is owned one percent by a corporation, wholly owned by Sheridan, which acts as general partner and ninety-

nine percent by various other limited partnerships, some of which are wholly owned by Sheridan as well.

**4.** *RS & P/W.C. Fields Limited Partnership, et al. v. BOSP Investments and BOMAT Investments,* Case No. 91 C 2496.

claim for back pay resulting from Trustee's post petition unfair labor practices); *In re G.I.C. Government Securities, Inc.,* 121 B.R. 647 (Bankr.M.D.Fla.1990).

In *In re E.A. Nord Co., Inc.,* 78 B.R. 289 (Bankr.W.D.Wash.1987) a claim based on an arbitration award including an award of fees authorized by statute and made by the arbitrator against the debtor was given administrative expense priority. Likewise, in *In re Execuair Corp.,* 125 B.R. 600 (Bankr. C.D.Cal.1991) the claim was based on a district court award of post petition attorney fees incurred in the prosecution of a contempt proceeding arising from the debtor's violation of a permanent injunction. *See In re Charlesbank Laundry, Inc.,* 755 F.2d 200 (1st Cir.1985) (fine for contempt arising from debtor's violation of injunction granted administrative priority).

In all these cases, the claim existed as a matter of non-bankruptcy law. The issue decided by these cases was not whether there was a claim (that issue had already been decided), but whether that claim was entitled to priority distribution in the bankruptcy cases as administrative claims. If it is fundamentally unfair that BOSP's fees and damages were incurred or paid, that would be equally true outside of bankruptcy. If Mr. Sheridan was unfair, that would have been true if no bankruptcy had been filed. The bankruptcy adds nothing to the movant's claim; it only requires a determination of the priority of any claim that might be allowed on other grounds. Here, BOSP attempts to collapse these two issues into one. It alleges grounds that may support the treatment of a debtor's liability as an administrative priority expense, but relies on those same grounds as the basis of that liability.

■ If there is such a thing as a fundamental fairness doctrine in bankruptcy, it is pertinent to the determination of the request that a claim be afforded administrative priority; it has nothing to do with the validity of the claim itself. The estate's liability cannot be based on any such doctrine, but only on some violation of a legal duty imposed by the bankruptcy code or non-bankruptcy law, as in the cases relied upon by BOSP: a duty of reasonable care in *Reading,* 391 U.S. 471, 88 S.Ct. 1759; a duty to obey injunctions in *Execuair,* 125 B.R. 600; a duty of a party to an arbitration to refrain from frivolous litigation in *Nord,* 78 B.R. 289, where the debtor was that party, unlike this case.

■ BOSP cites no case in which liability was imposed as a matter of fundamental fairness. The controlling person of a corporation or partnership is generally not liable for the debts of the corporation or partnership solely because he was the controlling person, even if he caused that entity to act unfairly or wrongfully. There is no reason why that principle should not apply in bankruptcy. Therefore, the so-called "fundamental fairness doctrine" cannot support a claim against this estate. Until the estate is found to be liable on some legally cognizable basis, there is no issue of priority of distribution to decide.

### b. Alter Ego Argument

■ BOSP's alter ego theory also fails as a basis of the estate's liability. To pierce the veil of limited liability, two requirements must be satisfied: (1) there must be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) adherence to the fiction of separate corporate existence would sanction a fraud or promote an injustice. *Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 56 Ill.Dec. 14, 21, 427 N.E.2d 94, 101 (1981); *Van Dorn Co. v. Future Chemical and Oil Corp.,* 753 F.2d 565, 569 (7th Cir.1985). Factors that Illinois courts have considered in the determination of whether the first prong of the test has been met are: (1) the failure to maintain adequate corporate records or comply with corporate formalities; (2) the co-mingling of funds or assets; (3) under-capitalization; and (4) the treatment of the assets of the corporation as if they were the individual's. *Main Bank,* 56 Ill.Dec. at 22, 427 N.E.2d at 102.

■ The movants have not alleged facts to support a finding that the first requirement is satisfied. In the main, they allege only that the debtor controlled the other entities, and would have benefitted if the corporations had succeeded in the Holderman litigation.

But it is often true that the actions of a corporation are controlled by a single individual, and it is always true that the owners of a corporation benefit when the corporation succeeds at a major venture. They do also assert in conclusory terms that the corporations were under-capitalized, but they cite no authority that those allegations alone establish the necessary unity of interest and ownership.

But even if that unity were established after a trial, BOSP has failed to show the existence of the second requirement: that adherence to the fiction of separate corporate existence would sanction a fraud or promote an injustice. It is not enough that the movants' judgment will go unsatisfied. Rather, BOSP must show that the injury it suffered resulted from the blurring of corporate and individual identities, as when an individual uses a corporation to obtain assets on the corporation's credit and then takes the benefit of those assets for himself.

After reviewing the case law, the court in *Sea–Land Services, Inc. v. Pepper Source,* 941 F.2d 519, 522–23 (7th Cir.1991), said the following:

> Generalizing from these cases, we see that the courts that properly have pierced corporate veil to avoid "promoting injustice" have found that, unless it did so, some "wrong" beyond a creditor's inability to collect would result: the common sense rules of adverse possession would be undermined; former partners would be permitted to skirt the legal rules concerning monetary obligations; a party would be unjustly enriched; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful.

Those are not the allegations here. Rather, BOSP alleges that the debtor, through the other entities, pursued frivolous litigation, caused those entities to receive fees they shouldn't have and allowed those entities to commit waste. But those actions had nothing to do with any confusion of identities. If the litigation was frivolous, or the management fees should not have been collected, or waste was committed, it was not because the corporations were Mr. Sheridan's alter egos.

Moreover, in this case, BOSP is not well positioned to complain that it was misled or injured in any way by the separate corporate existences. BOSP well knew the details of the corporate structures as reflected in the way BOSP litigated here and in the district court. BOSP knew who it was dealing with. Therefore, the recognition of the separate identities of the corporations does not promote a fraud on BOSP or an injustice such that those identities should be disregarded.

## V. CONCLUSION

BOSP has not satisfied its burden of proving its entitlement to payment of administrative expenses by Sheridan's estate for attorney's fees and costs, management fees paid after termination of management contracts and damages for waste and mismanagement. Its "fundamental fairness" argument is flawed because it makes no distinction between liability on a claim and the distribution priority of an allowed claim. BOSP relies on the awards of attorney and management fees against the Partnership Plaintiffs in the district court litigation to establish liability against Sheridan's estate. However, those awards were not against Sheridan or the estate. Therefore, without a liability based on some legal duty, BOSP's argument in support of administrative expense priority is inappropriate.

The Court also rejects BOSP's alter ego claim. BOSP has not alleged facts sufficient to support a finding that the veil of limited liability should be pierced to allow BOSP to proceed against Sheridan or his bankruptcy estate. Therefore, in light of the foregoing conclusions, the Court denies BOSP's request for allowance and payment of administrative expenses.