In re JAMESWAY CORPORATION, et. al., Debtors.

Kathleen Barnett, et. al., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

Jamesway Corporation, Defendant.

Local 560, an Affiliate of the International Brotherhood of Teamsters, Edwin Stier, Chairperson of the Board of Trustees of the Teamsters Industrial Employees Pension and Welfare Funds, and The Teamsters Industrial Employees Pension and Welfare Funds, Plaintiffs,

v.

Jamesway Corporation, Defendant.

Bankruptcy No. 93 B 44821(JLG). Adversary Nos. 96/8389A, 96/9039A.

United States Bankruptcy Court, S.D. New York.

Dec. 8, 1999.

Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for debtors.

Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano, P.C., Kenilworth, New Jersey, for Union plaintiffs.

Traub, Bonacquist & Fox LLP, New York City, for Unsecured Creditors' Committee.

***MEMORANDUM DECISION ON PLAINTIFFS' MOTION FOR ORDER CONFERRING ADMINISTRATIVE PRIORITY UPON CLAIMS FOR ATTORNEYS' FEES AWARDED UNDER WARN ACT***

JAMES L. GARRITY, Jr., Bankruptcy Judge.

We previously granted the plaintiff-employees herein summary judgment on their claims that Jamesway Corp. and its affiliated debtors (collectively, "debtors" or

"Jamesway") are liable to them under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2901 *et seq.*, for 60 days wages less any amounts that they were actually paid after October 12, 1995. We determined that their claims for those amounts are not entitled to priority under §§ 503(a)(1)(A) or 507(a)(1) of the Bankruptcy Code, and awarded them reasonable attorneys' fees pursuant to 29 U.S.C. § 2104(a)(6). *See Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 348 (Bankr. S.D.N.Y.1999) (the "Decision").[1]

Since then, the debtors and the Barnett plaintiffs[2] have settled their disputes. Jamesway has not settled with the Union plaintiffs and those parties cannot agree on the form of the order that we should enter implementing the Decision. To assist them in doing so, they have asked us to resolve three disputes. The first is whether the attorneys fees' that we awarded to the Union plaintiffs are entitled to administrative expense priority status under §§ 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code. The Union plaintiffs say that those expenses are entitled to priority treatment, while the debtor and the creditors' committee appointed herein (the "Committee") say that they are not. The second and third disputes concern whether the Decision governs the rights of the Accepting Plaintiffs and/or the Grievance Claimants (we define both terms below). The Union says that it does, while the debtor and the Committee argue that it does not.

We accord the attorneys' fees administrative priority expense status under the Bankruptcy Code. We find that the Decision applies to the Accepting Plaintiffs but does not cover the Grievance Claimants.[3]

1. On the consent of the parties in both adversary proceedings, we consolidated their motions for summary judgment on their WARN Act claims against debtors because they involved many of the same legal and factual issues.

2. We use the same terms herein as we used in the Decision.

3. The parties brought these matters to our attention during a status conference on December 1, 1999. To help expedite our resolution of these matters, we authorized the parties to submit letters detailing the support for

## Facts

These adversary proceedings were brought by the debtors' former union and non-union employees, who alleged that Jamesway violated the WARN Act when it fired them because it failed to give them advance notice that they were to be terminated. In the Decision, we held that after-the-fact correspondence between Jamesway and its former employees did not provide the requisite notice under the WARN Act, even if Jamesway did cease operating due to unforeseeable business circumstances or was a faltering company, because the letters did not contain basic information that employers are required to give affected employees and did not even address why Jamesway failed to give employees the full 60 days' notice required by the statute. Decision, 235 B.R. at 339–40. Based upon that finding, we held that Jamesway is liable to its former employees for 60 days' wages less any amounts that they were actually paid after October 12, 1995. As noted, we determined that their claims for those amounts are not entitled to administrative priority under §§ 503(a)(1)(A) or 507(a)(1) of the Bankruptcy Code, and awarded them reasonable attorneys' fees pursuant to 29 U.S.C. § 2104(a)(6).[4]

In late 1998 and early 1999, Jamesway submitted offers of judgment to all of the Union employees (the "Offer of Judgment").[5] Among other things, the offers provided that they were governed by Fed. R.Bankr.P. 7068,[6] that in accordance with that rule the plaintiffs had ten (10) days to accept them and that Jamesway would make payment to all accepting employees within thirty (30) days of acceptance. By letter dated March 2, 1999, the Union plaintiffs' counsel advised Jamesway that twenty-one (21) of the Union plaintiffs accepted the Offer of Judgment. By letter dated April 16, 1999, the Union plaintiffs' counsel advised Jameway that six (6) more Union plaintiffs had accepted the Offer of Judgment. We refer to the Union plaintiffs who accepted Offers of Judgment collectively as the "Accepting Plaintiffs". In

their respective positions, in lieu of memoranda of law. Counsel for the debtors, the Creditors' Committee and the Union plaintiffs submitted letters. Additionally, they agree that we should consider earlier correspondence from debtors' counsel and counsel to the Barnett plaintiffs relating to whether the attorneys' fees merit administrative priority status under the Bankruptcy Code, even though the debtors and the Barnett plaintiffs have resolved their disputes regarding payment of those fees. We have considered all of that correspondence in reaching our decision herein.

4. The facts are more fully set forth in, and we presume familiarity with, the Decision.

5. The parties seem to disagree on exactly when Jamesway submitted the Offers of Judgment. However, those differences are immaterial to our resolution of the issues herein.

6. Rule 7068 makes Fed.R.Civ.P. 68 applicable herein. That rules provides as follows:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact EP{1}BP{2} that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

each instance, counsel requested Jamesway to forward payment directly to her. Jamesway never sent those payments either to counsel or to the Accepting Plaintiffs.[7] After the thirty-day period lapsed without Jamesway making payment, counsel to the Union plaintiffs wrote to Jamesway inquiring as to the status of the payments. It is unclear how many letters counsel wrote to Jamesway; however, it is clear that she sent one dated June 17, 1999 (the "June 17 letter") in which she sought a report on the status of the payments to the Accepting Plaintiffs.[8] Six (6) days later, after receiving the Decision, counsel for the Union plaintiffs advised Jamesway that the Accepting Plaintiffs and the Union deemed the settlements to be null and void for lack of timely payment. Thus, the Union contends that those former Union employees should be awarded judgments on their WARN claims.

Ray Gomillion, Barbara Marshall, John Polen and Richard Whitnney (the "Grievance Claimants") are former Union employees who Jamesway terminated during the period from March 1994 through May 1995. Prior to the Filing Date, each was in the process of arbitrating a grievance claim against Jamesway, wherein they asserted, among other things, claims for wrongful termination and back pay (the "Grievance Claims"). The arbitration proceedings were automatically stayed on the Filing Date.[9] None of the Grievance Claimants are party to this adversary proceeding. Nonetheless, the Union plaintiffs contend that we should award them WARN claims on the basis of the Decision.

### Discussion

■ The debtors and the Committee maintain that we must treat the fees we have awarded to the Union plaintiffs herein as pre-petition general unsecured claims like the WARN act claims to which they relate. For support, they cite *Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1 (1st Cir.1992). That court interpreted the Supreme Court's decision in *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), and declined to award administrative expense status to an attorneys' fee award arising from an indemnification provision

Fed.R.Civ.P. 68.

7. The parties do not dispute that the following employees qualify as Accepting Plaintiffs: Edgar Becerra, James Braker, Fred Bruno, Oscar Carrillo, Patricia Coles, Joseph Ferdetta, Charles Foust, Daniel Garwo, Carmen Hayes, Jessie Jackson, John Jobes, Shirley Jolly, Sherri Kari, Franklin Lassiter, Brian McKeown, Nicholas Molina, James Moore, Emmanuel Pacius, Teofilo Rodriguez, Anna Romek, Darthula Smith, June Taliafaerro, Hector Vega, Jose Vega and Zoila Zuniga. None of these individuals ever received any payments from Jamesway either directly or through counsel. Apparently, one employee who accepted an Offer of Judgment, Jeffrey Notaro, received a payment from Jamesway directly, but it is not known how much was paid or when the payment occurred. As discussed herein, if Mr. Notaro received the full amount he agreed to accept in the Offer of Judgment, he does not qualify as an Accepting Plaintiff and is not covered by the Decision. If he did not receive payment in full, we treat him as an Accepting Plaintiff subject to the Decision (any payment in respect of his WARN Act claim to be reduced by any amounts he has already received).

8. The June 17 letter reads as follows:

> Quite some time ago, I forwarded a list of former Jamesway employees represented by Local 560 and this firm, who accepted the Third Offer of Judgment. Pursuant to the Offer of Judgment, payment was to be made within thirty (30) days. I also forwarded lists of Local 560 members who did not receive the Offer and lists of updated addresses, where our addresses differed from yours.
>
> Please advise what is holding up the payments and when they will be sent. I know that there are individuals who only accepted the offer because of the promise of prompt payment contained in the Offer. A copy of my correspondence is enclosed for your convenience.
>
> Also, please advise whether there is any additional information you need to process the payments.
>
> Your anticipated cooperation is appreciated.

9. On October 27, 1998, we approved a stipulation in which Jamesway and the Grievance Claimants agreed on the amount of each of their claims.

contained in a pre-petition contract because those fees were incurred in resisting the trustee's third party action for CERCLA contribution based upon the plaintiff's pre-petition ownership of property, which had nothing to do with any post-petition operation of the debtor's business. 954 F.2d at 7. They also rely upon *Abercrombie v. Hayden Corp. (In re David Abercrombie)*, 139 F.3d 755 (9th Cir.1998), wherein the Ninth Circuit similarly denied administrative expense status to attorneys fees awarded pursuant to a pre-petition contract, even though the debtor-in-possession continued to defend the state court judgment post-petition rather than conceding its validity.

The Union plaintiffs argue that *Hemingway Transport* and *Abercrombie* are inapposite, and that we should be guided by the court's decision in *In re Execuair Corp.*, 125 B.R. 600 (Bankr.C.D.Cal.1991). In that case, prior to the debtor's bankruptcy filing, the plaintiffs brought an action against it for alleged violations of the Lanham Act, a statute which provides for the award of reasonable attorneys' fees to the prevailing party. The debtor filed for bankruptcy during the pendency of that action, and continued to litigate it after the petition date. Post-petition, the court in that action found in favor of the plaintiffs and awarded them attorneys' fees in accordance with the statute. The bankruptcy court subsequently ruled that fees incurred post-petition were entitled to administrative priority, explaining that the statutory post-petition fees were incurred as the result of the post-petition acts of the debtor in possession, which, while intended to benefit the estate, led to the injury of a third party and qualified as administrative expenses provided the claimant could justify its right to them under law. *Id.* at 604. In *Irmas Family Trust v. Madden (In re Madden)*, 185 B.R. 815, 819 (9th Cir. BAP 1995), the Bankruptcy Appellate Panel for the Ninth Circuit extended the rationale articulated in *Execuair* to a situation involving post-petition attorneys' fees awarded in connection with litigation concerning a pre-petition contract.

▌ Debtors and the Committee contend that *Madden* and "apparently" *Execuair* were overruled by the 9th Circuit's subsequent pronouncement in *Abercrombie*. However, while *Madden* is factually similar enough to *Abercrombie* to support that conclusion, *Execuair*, in our view, is not. Apparently, *Execuair* is the only reported decision addressing the priority of fees awarded post-bankruptcy under a fee shifting statute where the debtor violated that statute pre-bankruptcy, but continued to defend and lost litigation post-bankruptcy. For this reason alone, it is clearly distinguishable from *Abercrombie*, and we believe it expresses the better view concerning the priority of those fees in light of the purpose of fee shifting statutes like the WARN act. Among other things, (i) unlike in a contract, the prevailing party has no right to attorneys' fees under a fee shifting statute before he or she prevails in the underlying action—here, post-petition; (ii) the fee provision in such statutes is intended to encourage attorneys to accept cases, *see Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir.1997) (discussing legislative history and purpose of fee shifting statutes), and it would discourage them from doing so post-petition if their claims were not pari passu with the fee claims of the debtor's attorneys as well as thwart Congress' goal of assuring that workers' rights under the WARN Act are adequately protected; and (iii) debtors with clear WARN Act liability would have little incentive to promptly pay their employees' claims, as opposed to engaging in post-petition litigation, if they knew that they could pay their adversaries' legal fees at pennies on the dollar.

▌ Each Offer of Judgment would qualify as an "executory accord" under New York's General Obligations law,[10] which provides in relevant part that:

10. N.Y.Gen.Oblig.L. § 15–501 defines "execu-    tory accord" as follows:

if an executory accord is not performed according to its terms by one party, the other party shall be entitled either to assert his rights under the claim, cause of action, contract, obligation, lease, mortgage or other security interest which is the subject of the accord, or to assert his right under the accord.

N.Y.Gen.Oblig.L. § 15–501.3. That provision essentially codifies common law developed in New York, which distinguished between an "executory accord" and a "substituted contract" or "superseding agreement" in determining the rights and remedies of the parties upon breach of a compromise or settlement agreement. *See Goldbard v. Empire State Mut. Life Ins. Co.*, 5 A.D.2d 230, 235, 171 N.Y.S.2d 194 (N.Y.A.D.1958) (purported oral settlement of an insurance dispute was an executory accord because "[i]t is generally more reasonable to suppose that [a settling party] bound himself to surrender his old rights only when the new contract of accord was performed"); *see also Langlois v. Langlois*, 5 A.D.2d 75, 77, 169 N.Y.S.2d 170 (N.Y.A.D.1957) (stating "there is a strong line of authority in this State to the effect that an agreement settling a tort claim made prior to suit or made out of court during the pendency of an action is presumed to be a mere executory accord"). If the settlement agreement was deemed to be a "substitute agreement" the non-breaching party was generally limited to the remedy of seeking enforcement of that agreement rather than the underlying claim. *See* 19A N.Y.Jur.2d, *Compromise, Accord, and Release* § 50 (1999). These principles are consistent with the law in New Jersey, where many if not all of the Accepting Employees resided, pursuant to which a novation of an existing contract is deemed to occur only if the parties intended to substitute the new obligation for the

old. *See In re Timberline Property Development, Inc.*, 115 B.R. 787, 790 (Bankr. D.N.J.1990); *see also Sixteenth Ward Building & Loan Assn. v. Reliable Loan Mortgage & Security Co.*, 125 N.J.Eq. 340, 342, 5 A.2d 753, 755 (N.J.Err, & App.1939) ("Novation is generally accepted to mean that there being a contract in existence, some new contract is substituted for it, either between the same or different parties, the consideration mutually being the discharge of the old contract. . . . In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed. The intention by the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor") (citations omitted). Based upon the foregoing, we find that each Offer of Judgment is an executory accord, and that, because Jamesway never honored its obligations thereunder, the Accepting Plaintiffs may seek to enforce their original WARN Act claims rather than the terms of the offers. Thus, the Accepting Claimants are subject to the Decision.

■ The Union reasons that we should give the Grievance Claimants allowed WARN claims because: (i) but for the filing of Jamesway's chapter 11 petition, the Grievance Claimants would have completed and won their arbitration proceedings, (ii) each would have been reinstated prior to the Filing Date and (iii) thereafter, each would have been terminated by Jamesway in violation of the WARN Act. There is no merit to the Union's position. The Grievance Employees were terminated prior to October 12, 1995, and their

---

an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim, cause of action, contract, obligation, or lease, or any mortgage or other security interest in personal or real property, and a

promise express or implied to render such performance in satisfaction or in discharge of such claim, cause of action, contract, obligation, lease, mortgage or security interest.

N.Y.Gen.Oblig.L. § 15–501(1) (McKinney 1999).

terminations were not part of a mass layoff or other WARN Act triggering event. Thus, the Decision does not cover the Grievance Claimants.

### *Conclusion*

For all of these reasons, we accord the fees incurred and awarded post-petition under 29 U.S.C. § 2104(a)(6) administrative priority under §§ 503(a)(1)(A) and 507(a)(1) of the Bankruptcy Code. We find that the Accepting Plaintiffs are subject to the Decision, and that, under the Decision, the Grievance Employees do not have WARN Act claims.

SETTLE ORDER.