**In re Joseph E. MADDEN, Debtor.**

**IRMAS FAMILY TRUST, and Gloria and Peter S. Gold Revocable Intervivos Trust, Appellants,**

v.

**Joseph E. MADDEN, Appellee.**

**BAP No. NC–94–2154–VRH.**

**BK. No. 93–47110 J.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 18, 1995.

Decided Aug. 22, 1995.

Mark Shinderman, Los Angeles, CA, for appellants.

David M. Sternberg, Walnut Creek, CA, for appellee.

## OPINION

Before VOLINN, RUSSELL and HAGAN, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

### OVERVIEW

Prior to filing his chapter 11 petition, the debtor commenced a suit against defendants for breach of contract in a state court. After the filing, the debtor in possession voluntarily continued with the litigation. Ultimately, defendants prevailed and were awarded attorneys' fees pursuant to the contract. Defendants claimed administrative priority for the portion of fees incurred post-petition. The court denied priority because the fees did not constitute a benefit to the bankruptcy estate. We REVERSE.

### FACTS AND PROCEEDINGS BELOW

In April 1993, the debtor, Joseph E. Madden, sued the Irmas Family Trust and the Gloria and Peter S. Gold Revocable Intervivos Trust (the Trusts), appellants herein, in state court. Madden's several causes of action in the state court suit arose from the Trusts' alleged breach of a real estate contract between the parties.

1. Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

2. "7.3 Attorneys' Fees. In the event of any action between Buyer and Seller seeking enforcement of any of the terms and conditions

During the pendency of the suit, on October 7, 1993, Madden filed for protection under chapter 11 of the Bankruptcy Code.[1] Thereafter, the debtor, as debtor in possession, decided to continue with active prosecution of the state court suit. On February 14, 1994, the Trusts moved for summary judgment, which was granted by the state court, and, pursuant to an attorneys' fee clause in the subject contract,[2] the court awarded them $87,000 in attorneys' fees. Of this amount, some $59,000 in fees and costs were found to have been incurred by the Trusts after the filing of Madden's bankruptcy petition.

The Trusts then filed a motion in the bankruptcy case to have this post-petition portion of their fee award granted administrative priority pursuant to § 503(b). The motion was denied by the court by order entered September 12, 1994, and this timely appeal followed.

### STANDARD OF REVIEW

We review the bankruptcy court's award or denial of administrative priority for abuse of discretion. In re Hanna, 168 B.R. 386, 388 (9th Cir. BAP1994).

### ISSUE PRESENTED

Whether the court abused its discretion by denying administrative priority to a liability for post-bankruptcy conduct incurred by the debtor in possession because 1) the liability did not arise from or yield a demonstrably commensurate benefit to the estate, and 2) the claim was based on rights arising from a prepetition contract with the debtor.

### DISCUSSION

The Code authorizes the bankruptcy court to allow payment to certain parties ahead of the general creditors. Under § 503(b):

of this Option Agreement, or in connection with the Property, the prevailing party in such action shall be awarded, in addition to damages, injunctive or other relief, its reasonable costs and expenses, not limited to taxable costs and reasonable attorneys' fees."

After notice and a hearing, there shall be allowed administrative expenses ... *including*—

(1)(A) the actual, necessary costs and expenses of preserving the estate, *including* wages, salaries, or commissions for services rendered after the commencement of the case....

11 U.S.C. § 503 (emphasis added).[3]

Such allowed administrative expenses are entitled to first priority payment under § 507(a). As can be seen by the language of § 503(b), the allowance of administrative expenses is mandatory, not discretionary. The discretionary aspect of administrative allowance involves the determination by the court of whether a particular claim is an administrative expense. Beyond the language quoted above, the term "administrative expense" is not defined elsewhere in the Code.

The term "including" is not limiting. 11 U.S.C. § 102(3). By use of the term in the introductory language of § 503(b), the statute contemplates that the subsection (1) costs of preserving the estate (as well as those in subsections (2)–(6)) are not the only type of liability that may be charged against a bankruptcy estate. Thus, charges against the estate other than those related to its preservation are not necessarily excluded from qualifying as administrative expenses.

■ In the Ninth Circuit, the activities that can be considered to be of benefit to the estate are construed strictly. In *In re Dant & Russell*, 853 F.2d 700 (9th Cir.1988), the court stated, "The statute is explicit. Any claim for administrative expenses and costs must be the actual and necessary costs of preserving the estate for the benefit of its creditors." *Id.* at 706 (citing *In re Baldwin–United Corp.*, 43 B.R. 443, 452 n. 12 (S.D.Ohio 1984)).[4] The issue in that case involved a claim for administrative priority

by the debtor's lessor for environmental cleanup costs on property which had been leased by the debtor. The lease was rejected by the debtor in possession shortly after bankruptcy pursuant to § 365(g). The debtor contended that the impacted property was not owned or operated by the bankruptcy estate and that any damages were of a prepetition nature allowable only as unsecured claims. The court held for the debtor, noting however, that a different result would have obtained had the impacted property been property of the estate. *Id.* at 709. *See also In re Hanna*, 168 B.R. 386 (9th Cir. BAP 1994).

While the construction indicated by *Dant & Russell* was strict as to the circumstances before it, that case and those following it do not indicate an inflexible approach. In the case of *In re Palau Corp.*, 18 F.3d 746 (9th Cir.1994), administrative priority was denied for a backpay award which accrued postpetition to a wrongfully terminated employee, despite an injunction to rehire the employee. Denial was based on the fact that the employee had been terminated prepetition and that the backpay award did not relate to services actually rendered to the estate. *Id.* at 751. While the liability could arguably be said to have accrued from a post-petition failure to obey a mandate of the NLRB to rehire the employee, *Palau*'s focus was on the liability, which had occurred prepetition; the post-petition enforcement of that liability could not be transformed into a post-petition obligation.

The foregoing cases do not address issues relating to post-petition activities or obligations of a bankruptcy estate. There are pertinent distinctions among the various activities carried on by such estates relating to entitlement to priority payment by the estate: 1) activities that serve to benefit the

---

3. Section 503(b) replaces § 64(a), its counterpart under the superseded Bankruptcy Act. The pertinent portions of the two sections are virtually indistinguishable. Section 64(a) stated in part:

The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) *the costs and expenses of administration, including the actual*

*and necessary costs and expenses of preserving the estate* ...

4. *Baldwin* states mistakenly that the term "including" was stricken from § 503(b), thereby warranting the conclusion that only those expenses linked to some aspect of preserving the estate may be given priority. As indicated below, Ninth Circuit authority is not premised on this misstatement.

estate as specified in the language of the statute itself; and 2) activities that may create an independent obligation of the estate to others, without regard to whether there was benefit to the estate. See the discussion of this issue in *In re Sierra Pacific Broadcasters*, 185 B.R. 575 (9th Cir. BAP 1995), holding that a claim arising from a postpetition industrial accident and subsequent workers' compensation award should be given an administrative expense priority under § 503(b)(1).

Thus, where there is not only a lack of benefit but actual loss, the estate may nevertheless be held liable for an effort with a negative result. Where a chapter 11 business operates at a loss, those who serve it—payroll, suppliers, and administrative officers, including counsel—nevertheless are entitled to and commonly receive priority payment. It is not unusual that payment for these ultimately unproductive charges will result in exhaustion of the estate's remaining assets before anything is paid to those in the same or a lower order of priority—particularly general creditors.

An analysis based solely upon monetary benefit does not readily resolve other claims against the estate which are included in the larger realm implied by the statute. This broader area may be considered to encompass the cost of complying with a standard of behavior to which the estate must adhere as an entity which functions in the commercial world. As such, the estate cannot escape its liabilities by transmuting transactional costs and charges of functioning as an entity, postpetition, into unsecured claims of low or nonpriority nature against the estate.

Dealing equitably with this situation requires assessment of administrative liability for post-petition conduct of a chapter 11 bankruptcy estate. Such an evaluation

would comport with the analysis set forth in *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), which held that satisfaction of a tort liability incurred by the receiver during an arrangement proceeding would be granted administrative priority, since the liability arose within the scope of the receiver's authority. The liability was thus chargeable against the estate as an actual and necessary cost of administration.[5] *See also In re Charlesbank Laundry, Inc.*, 755 F.2d 200 (1st Cir.1985) (postpetition fine occasioned by chapter 11 debtor's disregard of injunction regarding zoning violation allowed administrative priority). In *S.E.C. v. United Financial Group, Inc.*, 576 F.2d 217, 223 n. 13 (9th Cir.1978), the court explained that the result in *Reading* was intended to prevent general creditors from benefitting at the expense of innocent parties.

While tangentially related to the issue before us, there are cases permitting administrative charges against the estate for unsuccessful opposition to claims by the trustee. In *In re E.A. Nord Co., Inc.*, 78 B.R. 289 (Bankr.W.D.Wash.1987), the court allowed a post-petition arbitrator's award as an administrative expense because the debtor's objection to the underlying claim was frivolous.[6] *In re Execuair Corp.*, 125 B.R. 600 (Bankr. C.D.Cal.1991), expanded on this position and allowed an attorneys' fee award administrative priority where "a post-petition act by the debtor-in-possession or trustee which was intended to benefit the estate ... led to the injury of a third party...." 125 B.R. at 604. The court limited its rule to those cases where the claimant can demonstrate an independent legal basis for the fee award. The court based its rationale on *Reading*, noting that Congress was presumably aware of that decision when it amended the Bankruptcy Act. *Id.*

**5.** *See also Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). The court examined a bankruptcy estate's potential liability for environmental cleanup costs and noted, "Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions." *Id.* at 285, 105 S.Ct. at 711. The logic of this standard of behavior may be apprehended as equally applicable to other obligations whether

imposed by statute, the court, or as in the present case, by contract.

**6.** Appellants attempt to characterize the debtor's lawsuit as frivolous based on the summary judgment, which concluded that the debtor could not establish the necessary elements of his causes of action. Neither the state court nor the bankruptcy court found the underlying suit to be frivolous.

In the instant case, the debtor in possession continued with a state court lawsuit on a breach of contract claim against appellants, voluntarily prosecuting the estate's claim for its benefit. Thus, the newly created entity-estate claimed for itself rights commensurate with those of the prepetition debtor.[7] Under these circumstances, the question arises as to why the liability provided in the contract terms for attorneys' fees in the event of loss should not apply.

To allow the debtor in possession to avoid liability for attorneys' fees by relegating them to the prepetition creditor pool can result in injustice to those who become engaged, voluntarily or involuntarily, in transactions with the bankruptcy estate, suffering loss or damage thereby. The inequity of such loss is heightened where the claimant may be held subordinate to payment of first priority administrative claims, which, in this case, will likely include the debtor's counsel.

■ Qualification of a claim for administrative priority does not require that a postpetition claimant demonstrate a tangible benefit to the estate, but rather, a showing that as a result of the trustee's actions on behalf of the estate, the claim was incurred and became an element of the "actual, necessary costs and expenses of preserving the estate." § 503(b)(1)(A). Efforts to preserve the estate are not always successful, but the contingency of loss should not be borne by the trustee's adversary where the trustee is necessarily bound by statute or contract to compensate the party for costs of defense.

## CONCLUSION

A bankruptcy estate is answerable to claims for obligations it incurs, whether by contract or applicable law. Officers of an estate and its assets should not be insulated from meeting such obligations by deferring their payment to payment of conventional expenses of administration or by requiring a showing that the estate received an immediate or tangible benefit from the claimant.

---

7. The trial court noted in its findings that appellants cross-complained in state court. This cross-complaint has not been made part of our

Accordingly, the judgment below is REVERSED.

record, but does not appear to be the basis for the attorneys' fee award.