SCHROEDER, Circuit Judge:
 

 This is a bankruptcy appeal that involves interpretation of the Bankruptcy Code’s provision affording the highest level of priority to claims for “administrative expenses.” 11 TXS.C. § 507(a)(1).
 

 Nearly three years before filing his bank-ruptey petition, the debtor, David Abercrom-bie, prevailed in state court on a real estate contract claim. His adversary, Hayden Corporation, appealed. While the appeal wended its way through the Oregon appellate courts, Abercrombie filed his bankruptcy petition. The final judgment of the Oregon Supreme Court reversing his trial court victory was entered after the bankruptcy proceedings had commenced. Because the real estate contract provided for attorneys’ fees in favor of the prevailing party in litigation, Hayden was awarded fees against Abercrom-bie.
 

 The question before us is whether Hayden’s claim for attorneys’ fees is entitled to be treated as an administrative expense. The term is defined in 11 U.S.C. § 503(b)(1)(A) as a cost and expense of “preserving the estate ... after the commencement of the ease.” The bankruptcy court held that Hayden’s claim was an administrative expense, but on appeal, the district court disagreed. We hold that the claim is not an administrative expense, because it arises not out of the efforts to preserve the estate, but out of litigation over a contract entered into before the bankruptcy petition was filed. In so holding, we agree with the only ease involving similar circumstances and legal issues, the First Circuit’s decision in
 
 In re Hemingway Transport, Inc.,
 
 954 F.2d 1 (1st Cir.1992). We therefore affirm the district court.
 

 BACKGROUND
 

 In 1991 Abercrombie obtained a $4.65 million judgment against Hayden in Multnomah County (Oregon) Circuit Court for the breach of a real estate contract. Hayden appealed and was unsuccessful in the Oregon Court of Appeals. Hayden then appealed to the Oregon Supreme Court. The appeal had been briefed and argued prior to June of 1994. On June 6, 1994, Abercrombie filed a Chapter 11 bankruptcy petition. Thereafter, the Oregon Supreme Court reversed the judgment and in 1995 entered a judgment requiring Abercrombie to pay Hayden’s appellate attorneys’ fees. The grant of fees was premised on a provision of the real estate contract that was the subject of the original dispute. The parties do not dispute that postpetition fees total $18,550.50.
 

 Hayden moved to allow the postpetition fees as administrative expenses. The bankruptcy court originally denied the request but later granted it upon a motion for reconsideration. The court relied upon the decision of the Ninth Circuit Bankruptcy Appellate Panel in
 
 In re Madden,
 
 185 B.R. 815 (9th Cir. BAP 1995).
 

 Abercrombie appealed the order and the District Court for the Western District of Washington reversed, holding that Ninth Circuit precedent directed a result contrary to
 
 Madden.
 

 DISCUSSION
 

 In classifying the order of payment for creditors’ claims, the Bankruptcy Code affords the highest level of priority to claims denominated “administrative expenses.” 11 U.S.C. § 507(a)(1). Section 503(b)(1) of the Code defines administrative expenses, enumerating six specific types of claims that qualify for first priority. Appellant Hayden relies on the following language:
 

 After notice and a hearing, there shall be allowed administrative expenses ..., including(l)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for
 
 *757
 
 services rendered after the commencement of the case.
 

 11 U.S.C. § 503(b).
 

 The present statute was preceded by a similar provision in the earlier Bankruptcy Act. Interpreting the earlier provision, the Supreme Court explained that the purpose of the administrative expense priority is to facilitate the operation of the debtor-in-possession’s business, with a view to rehabilitation.
 
 See Reading Co. v. Brown,
 
 391 U.S. 471, 475, 88 S.Ct. 1759, 1761-62, 20 L.Ed.2d 751 (1968). The availability of the priority encourages third parties to deal with a business that has filed in bankruptcy, because these parties will be paid ahead of other creditors.
 
 See In re Mammoth Mart, Inc.,
 
 536 F.2d 950, 954 (1st Cir.1976).
 

 To limit the administrative expense priority to those situations where the purpose of rehabilitation will be served, our court has adopted the test originally established by the First Circuit in
 
 Mammoth Mart:
 

 The claimant must show that the debt asserted to be an administrative expense
 

 (1) arose from a transaction with the debt- or-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and
 

 (2) directly and substantially benefitted the estate.
 

 In re DAK Indus.,
 
 66 F.3d 1091, 1094 (9th Cir.1995).
 

 In
 
 DAK
 
 we considered whether administrative expense priority was appropriate for postpetition installment payments on a software licensing agreement. The Microsoft Corporation had licensed its Word software to debtor DAK for a term of one year. DAK then installed the software on its computers and sold the computers to end consumers. Although the licensing fees were calculated per unit sold, DAK was obligated to make minimum installment payments to Microsoft regardless of the number of computers sold. DAK’s sales never exceeded the contractual minimum. Midway through the contract year, DAK filed for bankruptcy. DAK continued selling computers with Microsoft Word installed, but later rejected the contract without having assumed it under the provisions of 11 U.S.C. § 365.
 

 We held that the computer sales during the postpetition period did not trigger administrative expense priority. We reasoned that the licensing agreement was more akin to a sale of technology rather than a royalties agreement, because (1) DAK’s entire debt to Microsoft arose prepetition; (2) the minimum commitment resembled an installment sales provision; and (3) the transfer of technology rights was complete and irrevocable at the moment of the prepetition contract. Thus, the technology sale was entirely a prepetition contract event. By selling the computers postpetition with software that Microsoft had already delivered, DAK was not dealing with Microsoft. “In this ease, Microsoft was not induced to and did not do business with the debtor postpetition.” 66 F.3d at 1097. The transaction therefore did not prompt § 503(b) concerns.
 

 The
 
 DAK
 
 inquiry thus focuses on whether the contract giving rise to the claim was entered into before or after the bankruptcy petition. Postpetition contracts may qualify for administrative expense priority, but costs and expenses arising out of prepetition contracts are treated under the Bankruptcy Code as nonprioritized unsecured claims.
 
 See
 
 66 F.3d at 1093.
 

 Applying similar logic, we have denied administrative expense priority for an award of backpay that accrued after the filing of a petition.
 
 See In re Palau Corp.,
 
 18 F.3d 746 (9th Cir.1994). In
 
 Palau,
 
 an employer had wrongfully dismissed two employees. While a suit was pending, the employer corporation filed under Chapter 11. The employees, who eventually obtained a judgment for back wages, attempted to assert the claim as an administrative expense because the award of back wages had accrued partly postpetition. Again focusing on the moment of contracting, the court held that the claim was essentially a prepetition claim for wages. The employees performed no services for the bankruptcy estate, but merely claimed back wages for their prepetition services to the debtor.
 

 Leading cases from the other circuits employ a rationale similar to that of
 
 DAK
 
 and
 
 *758
 

 Palau.
 
 They highlight the importance of the contract policies underlying § 503(b). “When third parties are induced to supply goods or services to the debtor-in-possession ..the purposes of [§ 503] plainly require that their claims be afforded priority.”
 
 Mammoth Mart,
 
 536 F.2d at 954. The same principle does not apply, however, when the third party transacted with the debtor pre-petition. “It is only when the debtor-in-possession’s actions themselves-that is, considered apart from any obligation of the debtor-give rise to a legal liability that the claimant is entitled to a priority....”
 
 Id.
 
 at 955. Relying heavily on
 
 Mammoth Mart,
 
 the Seventh Circuit has held that prepetition contracts do not trigger administrative expense priority when the debtor’s liability was fixed and irrevocable at the time of filing.
 
 See Matter of Jartran,
 
 732 F.2d 584 (7th Cir.1984).
 

 Applying our established law in this case, we must conclude that Hayden’s award of fees does not qualify as an administrative expense. It does not meet our requirement that the claim arise out of a postpetition transaction. The Oregon court awarded attorneys’ fees in accordance with the debtor’s
 
 prepetition
 
 contract with Hayden. Thus, the fees arose out of a transaction with the individual debtor rather than the debtor-in-possession. No § 503 concerns are triggered.
 

 Appellant characterizes the defense of the appeal as postpetition conduct of the debtor-in-possession, and contends that it therefore qualifies as a postpetition expense necessary to preserve the estate within the meaning of the statute. Both
 
 DAK
 
 and
 
 Jartran
 
 refute such a contention, however. In
 
 DAK,
 
 the debtor continued to sell computers with Microsoft software installed after the bankruptcy petition had been filed. This sort of post-petition conduct did not alter our contract analysis and did not convert Microsoft’s pre-petition claim into an administrative expense.
 
 See
 
 66 F.3d at 1095-96. Likewise in
 
 Jar-tran,
 
 advertisements were published and payments became due after the filing of the bankruptcy petition. The Seventh Circuit focused, however, on the moment of dealing and concluded that despite any conduct that may have occurred postpetition, the relevant transaction occurred prepetition.
 
 See
 
 732 F.2d at 587-88.
 

 Hayden seeks to bring itself within
 
 Reading v. Brown,
 
 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), which created a venerable but limited exception to the postpetition transaction requirement. There, tort claimants were awarded administrative expense priority for damages sustained in a postpetition fire caused by the negligence of a receiver. Clearly, these claimants had not transacted with the estate postpetition. Rather, they suffered an unanticipated injury due to the receiver’s negligence. The
 
 Reading
 
 Court determined that administrative expense priority was appropriate because the damage to the plaintiffs was caused by the postpetition operation of the estate’s business. The bankruptcy laws allow an insolvent business to continue in operation with the hope that its creditors will benefit from a partial or complete rehabilitation of the debt- or. In the Court’s words, the tort plaintiff “had an insolvent business thrust upon it by operation of law.”
 
 Reading,
 
 391 U.S. at 478, 88 S.Ct. at 1763. Thus, the tort claimants were allowed to recover ahead of the creditors for whose benefit the continued operation of the business was allowed.
 
 Id.
 

 The
 
 Reading
 
 exception operates to deter the trustee from injuring third parties. Several circuit cases have applied the
 
 Reading
 
 exception in differing contexts. For example, the First Circuit has held that the administrative expense priority is appropriate when the trustee’s intentional violations of the law injure others.
 
 See In re Charlesbank Laundry, Inc.,
 
 755 F.2d 200 (1st Cir.1985) (trustee continued to operate laundry facility in violation of zoning laws and injunction);
 
 see also In re Copeland Enterprises,
 
 991 F.2d 233 (5th Cir.1993) (trustee deliberately withheld state sales tax payments in hopes of earning interest for the estate);
 
 In re N.P. Mining Co.,
 
 963 F.2d 1449 (11th Cir.1992) (trustee violated state environmental regulations while operating the debtor’s business postpetition).
 

 Appellant argues that the
 
 Reading
 
 exception should apply in this case because Hayden was “injured” by the debtor-in-possession’s postpetition decision to continue
 
 *759
 
 defending the trial court judgment rather than conceding its invalidity in the Oregon Supreme Court. Yet the source of the estate’s obligation remains the prepetition fee provision. For that reason the First Circuit rejected Hayden’s very argument in
 
 In re Hemingway Transport, Inc.,
 
 954 F.2d 1 (1st Cir.1992).
 

 In
 
 Hemingway,
 
 the trustee in bankruptcy filed a third party complaint against Woburn Associates as a “potentially responsible party” in a CERCLA action. The bankruptcy court granted summary judgment to Woburn and required the trastee to pay Woburn’s attorneys’ fees pursuant to a prepetition contractual provision. Woburn subsequently moved to allow the fees as administrative expenses. The First Circuit persuasively ruled that Woburn could not meet the requirements it established in
 
 Mammoth Mart,
 
 and which this circuit adopted in
 
 DAK.
 
 Wo-burn’s right to attorneys’ fees arose from the prepetition contract between the parties, not from a postpetition transaction.
 
 See
 
 954 F.2d at 5. The court in
 
 Hemingway
 
 further ruled that the
 
 Reading
 
 exception was inapplicable. ‘We are aware of no authority that the
 
 Reading-Charlesbank
 
 exception encompasses a right to payment originating in a prepetition contract with the debtor.” 954 F.2d at 7.
 

 The Ninth Circuit Bankruptcy Appellate Panel reached an opposite result in
 
 In re Madden,
 
 185 B.R. 815 (9th Cir. BAP 1995), a case with facts similar to those of the instant ease. In
 
 Madden,
 
 the debtor filed a bankruptcy petition during the pendency of state court litigation, which the debtor-in-possession elected to continue. After losing on summary judgment, the debtor was directed to pay the defendant’s postpetition fees and costs, pursuant to the parties’ contract. The BAP panel held that the award was an administrative expense, reasoning that the continued prosecution of the case subjected the bankruptcy estate to an independent obligation.
 
 Madden,
 
 however, did not address our circuit precedent establishing the postpe-tition transaction requirement, and indeed
 
 Madden
 
 conflicts with that precedent and with
 
 Hemingway,
 
 the only other circuit case that has addressed a similar issue. We agree with the decision in
 
 Hemingway.
 

 The judgment of the district court is AFFIRMED.