# UNITED STATES COURT OF APPEALS

## For the Fifth Circuit

_____

No. 00-30899

_____

IN THE MATTER OF JACK/WADE DRILLING, INC.,

Debtor.

TOTAL MINATOME CORP.,

Appellant,

VERSUS

JACK/WADE DRILLING, INC., PAUL N. DEBAILLON, TRUSTEE, UNITED STATES
TRUSTEE, and BAKER HUGHES, INC.,

Appellee.

Appeals from the United States District Court
for the Western District of Louisiana

July 13, 2001

Before EMILIO M. GARZA and PARKER, Circuit Judges, and ELLISON, District Judge.[*]

KEITH P. ELLISON, District Judge.

Appellant Total Minatome Corporation ("TMC") appeals a district court judgment denying

its Motion for Payment of an Administrative Claim in the amount of $ 496,724.79 pursuant to Title

---

[*] District Judge of the Southern District of Texas, sitting by designation.

11, United States Code, section 503(b)(1)(A). The question before us is whether a non-debtor litigant is entitled to claim administrative priority for its attorney fees, costs, and expenses incurred in post-petition litigation instituted by a bankruptcy trustee against the non-debtor, and awarded pursuant to the pre-petition contract upon which the trustee based his litigation. Because we find that the exception created in *Reading Company v. Brown*, 391 U.S. 471(1968) does not extend to this award, we decline to grant administrative priority. The judgment of the district court is AFFIRMED.

## I.

Appellant TMC and debtor Jack/Wade Drilling, Inc. entered into a turnkey drilling contract on September 8, 1994. On April 27, 1995, Jack/Wade filed a Chapter 7 bankruptcy petition. Appellee Paul N. DeBaillon, Jack/Wade's trustee in bankruptcy, filed suit in federal district court on June 17, 1996, for breach of that pre-petition drilling contract, alleging that TMC was obligated to pay Jack/Wade for its drilling services and had failed to do so. TMC filed a counterclaim against the trustee, alleging that Jack/Wade was the first to breach the contract by failing to drill to the proper turnkey depth. Following a trial on the merits, a jury rejected both parties' allegations of breach.

The contract provided for an award of attorney fees, costs, and expenses to the "prevailing party" in any dispute on the contract and TMC sought that award. The district court, however, found that, because the jury had rejected the allegations by both sides, neither party could be said to have prevailed. TMC appealed to this Court, which vacated the district court's order and remanded the case for a determination of the "prevailing party." On September 14, 1999, the district court concluded that TMC was the "prevailing party" and awarded $315,412.50 in attorney fees and $181,312.29 in costs and expenses.

2

On December 15, 1997, before resolution of the "prevailing party" dispute, TMC filed a motion in bankruptcy court to have its claim for attorney fees, costs, and expenses given priority as an administrative expense under 11 U.S.C. §503(b)(1)(A). A hearing on the motion was continued to await resolution of TMC's Fifth Circuit appeal of that dispute. The bankruptcy court heard TMC's request on November 9, 1999, and denied the motion to have its attorney fees, costs, and expenses award treated as an administrative expense and given priority under the bankruptcy code.[1] TMC appealed the decision of the bankruptcy court to the district court, which affirmed the denial of its motion. This appeal followed.

**II**.

We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law as the district court applied. *See In the Matter of Pro-Snax Distributors, Inc.*, 157 F.3d 414, 419-20 (5th Cir. 1998). A bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo. *See In re Gamble*, 143 F.3d 223, 225 (5th Cir. 1998). Because this appeal presents only questions of pure law, we review de novo.

Section 507(a)(1) of the bankruptcy code establishes that the administrative expenses incurred in bankruptcy are to be given priority in distribution such that they are generally paid in full before other unsecured non-priority claims. *See* 11 U.S.C. § 507(a)(1). These administrative expenses

---

[1] Both the bankruptcy judge and the district court below found that TMC was not entitled to administrative priority of its attorney fee claim on the alternative theory of assumption of an executory contract under 11 U.S.C. § 365. On appeal, Appellant TMC neither presented this issue in oral argument nor urged it in its brief. We, therefore, find the question to be not properly before the Court and we do not rule on it.

include the actual and necessary costs and expenses of preserving the estate. *See* 11 U.S.C. §

503(b)(1)(A). TMC asserts on appeal that its award of attorney fees, costs, and expenses constitutes

"actual and necessary costs" and should, accordingly, be given priority in the distribution of

Jack/Wade's assets.

In order to qualify as an "actual and necessary cost" under section 503(b)(1)(A), a claim

against the estate must have arisen post-petition and as a result of actions taken by the trustee that

benefitted the estate. *See Toma Steel Supply, Inc. v. Transamerican Natural Gas Corp. (In the*

*Matter of Transamerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992) (finding that a

"prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a

transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability

of the debtor-in-possession's business to function"). Section 503(b)(1)(A) claims, therefore, generally

stem from voluntary transactions with third parties who lend goods or services necessary to the

successful reorganization of the debtor's estate. *See id.* at 1415 (asserting that "[t]he purpose of

Section 503 is to permit the debtor's business to operate for the benefit of its prepetition creditors")

(citing *In re Costal Carriers Corporation*, 128 B.R. 400, 403 (D. Md. 1991)).

TMC admits that its claim against Jack/Wade does not meet the requirements for section

503(b)(1)(A) treatment because the debtor's estate received no discernable benefit from the lawsuit

against TMC. *See NL Industries, Inc. v. GHR Energy Corporation*, 940 F.2d 957, 966 (5th Cir.

1991) (asserting that "[c]ourts have construed the words "actual" and "necessary" narrowly: the debt

must benefit [the] estate and its creditors"). TMC asserts, however, that its claim should be given

administrative priority under an exception created by the Supreme Court for damages inflicted on

innocent third parties through a trustee's operation of the debtor's estate. *See Reading Company v.*

4

*Brown*, 391 U.S. 471, 485 (1968) (concluding that "damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to 'actual and necessary costs' of a Chapter XI arrangement" even when no actual benefit to the estate resulted).

The Supreme Court in *Reading* articulated a principle of "fairness to all persons having claims against an insolvent" designed to guide courts in determining priorities in bankruptcy distributions. *See id.* at 477. There is, of course and for good reason, a general presumption in bankruptcy favoring equality in distribution such that "if one claimant is to be preferred over others, the purpose should be clear from the statute." *See Nathanson v. NLRB*, 344 U.S. 25, 29 (1952). When a third party is damaged by the wrongful conduct of a receiver in the course of operating the debtor's estate, however, the Court concluded that it would be unfair to force that party to share equally with those creditors for whose benefit the estate was being operated. *See Reading Company v. Brown*, 391 U.S. 471, 478 (1968) (finding that the "petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law").

The *Reading* exception has survived Congressional amendments to the bankruptcy code and been recognized and applied by nearly every Court of Appeals in the nation. *See, e.g.*, *Yorke v. NLRB*, 709 F.2d 1138 (7th Cir. 1983) (applying *Reading* to damages incurred based on a trustee's failure to bargain with the union as required by federal law); *In re Charlesbank Laundry, Inc.*, 755 F.2d 200 (1st Cir. 1985) (applying *Reading* to nuisance damages incurred based on the debtor's violation of a temporary injunction while operating its business); *In the Matter of Al Copeland Enterprises, Inc.,* 991 F.2d 233 (5th Cir. 1993) (applying *Reading* to taxes wrongfully withheld by the debtor-in-possession and the interest earned on them). No Court of Appeals, however, has extended *Reading* to cover debts incurred by a non-wrongful post-petition action to liquidate a

chapter 7 bankruptcy estate. [2] Because we do not find that *Reading* was intended to grant priority

to post-petition attorney fee awards resulting from a trustee's good faith attempt to liquidate the

debtor's estate by bringing suit on a pre-petition contract, we decline Appellant's invitation to be the

first to extend the exception.[3]

---

[2] The bankruptcy appellate panel of the Ninth Circuit did, at one point, adopt an extremely broad interpretation of *Reading* and grant administrative priority to an award of attorney fees based on a provision of a pre-petition contract between the debtor and the third party. *See In re Madden*, 185 B.R. 815, 819 (B.A.P. 9th Cir. 1995) (asserting that "a bankruptcy estate is answerable to claims for obligations it incurs, whether by contract or applicable law"). While the decision in *In re Madden* led to similar opinions from district courts, it was later disavowed by the Ninth Circuit in *In re Abercrombie*, 139 F.3d 755, 759 (9th Cir. 1998). *See, e.g.*, *In re Beyond Words Corporation*, 193 B.R. 540, 546 (N.D. Cal. 1996) (relying on *In re Madden* to find that attorney fees granted under the prevailing party provision of the pre-petition contract should be prioritized as an administrative expense because "a bankruptcy estate should be answerable to claims for obligations it incurs, whether by contract or applicable law"). There, the Court adopted the position of the First Circuit and held that the attorney fees awarded to a third party who successfully fought a judgment the debtor-in-possession continued to defend would not be granted administrative expense priority because the "source of the estate's obligation remains the prepetition fee provision." *See In re Abercrombie*, 139 F.3d 755, 759 (9th Cir. 1998) (citing *In re Hemingway Transport, Inc.*, 954 F.2d 1 (1st Cir. 1992)).

In *In re Kadjevich*, 220 F.3d 1016 (9th Cir. 2000), the Ninth Circuit denied administrative priority to an attorney fee award granted for a bad faith breach of a post-petition settlement of a pre-petition claim. The Court noted, however, that "[w]e do not deal here with a case in which a representative of the estate commenced litigation on behalf of the estate after a bankruptcy petition was filed." *Id.* at 1021. This reservation, while relevant to the current analysis, does not directly implicate the facts of the instant case because the statement appeared to focus on the pre-petition genesis of the petitioner's damage award. *See id.* at 1021. Further, the Court did overrule a district court decision which allowed as an administrative expense the attorney fees awarded for bad faith opposition to a pre-petition contempt suit. *See id.* at 1021 (citing disapprovingly *In re Execuair*, 125 B.R. 600 (C.D. Cal. 1991)).

A district court in *In re Met-L-Wood Corporation*, 115 B.R. 133 (N.D. Ill. 1990) also gave administrative priority to a debt for attorney fees awarded to a party sued by the trustee. In that case, however, the trustee instituted a lawsuit against the debtor's attorney alleging he committed fraud during the liquidation of some of the debtor's assets. *See id.* at 134. Attorney fees were awarded by the bankruptcy court following a finding by the court that the trustee's lawsuit "proved to have [no] merit whatsoever." *See id.* at 136. The court found the attorney fee award to be covered by 11 U.S.C. § 330(a)(2) as an "actual [and] necessary expense[] of the debtor's attorney" and gave it administrative priority under that provision. *See id.* at 135. The Court did not address whether the fee award met the requirements of section 503(b)(1)(A).

[3] Appellee Paul Debaillon urges the Court to reject Appellant's administrative expense claim against the Jack/Wade estate as being a "pre-petition" debt because it arose out of a pre-petition contract. While we recognize that many courts have defined post-petition damage awards that are traceable to pre-petition activity as "pre-petition" claims automatically barred from administrative priority treatment, we decline to do so. *See, e.g., In re Hemingway Transport, Inc.*, 954 F.2d 1 (1st Cir. 1992) (denying administrative priority to an attorney fee claim arising out of post-petition litigation on a pre-petition contract); *In re Kadjevich*, 220 F.3d 1016 (9th Cir. 2000) (denying administrative expense priority to attorney fees awarded post-petition from post-petition litigation on a pre-petition claim).

Although TMC's claim is traceable to a pre-petition transaction with the debtor – and would not exist but for that pre-petition transaction – we prefer to avoid imposing the fictional label of "pre-petition" on a claim that is, in reality, a post-petition claim. Neither TMC's damages nor its right to recover on those damages arose until after the trustee brought and lost its suit on the pre-petition contract. While we certainly consider TMC's pre-petition dealings

In evaluating TMC's bid for administrative priority of its attorney fees, the Court begins with the presumption that all Jack/Wade's creditors are equally innocent victims in this bankruptcy. *See Reading Company v. Brown*, 391 U.S. 471, 482-83 (1968) (acknowledging that "[e]xisting creditors are, to be sure, in a dilemma not of their own making"). The question before us, therefore, is not whether TMC deserves to get paid, but whether TMC deserves to get paid at the expense of Jack/Wade's existing unsecured creditors.

The principle announced in *Reading* of "fairness to all persons having claims against an insolvent" has survived Congressional amendments to the bankruptcy code. *See Reading Company v. Brown*, 391 U.S. 471, 477 (1968); *In the Matter of Al Copeland Enterprises*, 991 F.2d 233, 239 (5th Cir. 1993) (noting that "[t]he Court's opinion in *Reading* survived Congress's revisions to the Bankruptcy Code"). Consistent with this objective, the statute has identified certain creditors to be preferred over others, and imposed a rule of equal distribution of the estate between the remaining unsecured parties. *See Nathanson v. NLRB*, 344 U.S. 25, 29 (1952) (holding that "if one claimant is to be preferred over others, the purpose should be clear from the statute"). The *Reading* exception arose out of a particular set of facts in which the Supreme Court determined that this statutory objective of fundamental fairness would be defeated if the statute were applied literally. *See Reading Company v. Brown*, 391 U.S. 471, 477 (1968).

In *Reading*, the claimant was an owner of a neighboring business whose property was damaged by a fire negligently caused by the bankruptcy receiver in the course of operating the

---

with the debtor to be relevant, we consider them a factor in determining whether *Reading* apples to grant administrative priority to the disputed claim, rather than as a determination by itself.

debtor's estate during a bankruptcy reorganization. *See id*. at 473-74. The Supreme Court held that it would be unfair to force the fire victim to share equally with the existing creditors and granted administrative priority to that claimant. *See Reading Company v. Brown*, 391 U.S. 471, 478 (1968) (framing the question as "whether the fire claimants should be subordinated to, should share equally with, or should collect ahead of those creditors for whose benefit the continued operation of the business . . . was allowed").

The *Reading* Court identified two factors that distinguished the claim of the fire victim from that of a typical unsecured party who is injured post-petition; 1) the wrongful nature of the receiver's act, and 2) that the act was committed in the course of operating the debtor's business so as to improve the position of the existing creditors. *See id*. at 477-79. The Court determined that the claimant was not merely an unlucky victim of the debtor's bankruptcy, but a foreseeable casualty of the receiver's negligence in operating a business that would not otherwise be able to operate but for the provisions of the bankruptcy statute. *See id*. at 478 (asserting that "the present petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law"). Because the receiver had chosen to operate the estate to improve the position of the existing creditors, fairness dictated that the injured claimant be entitled to recover its damages at the expense of the existing creditors when the receiver operated negligently.

Unlike the situation in *Reading*, fairness does not dictate that TMC's claim for attorney fees be paid at the expense of Jack/Wade's existing creditors. The trustee acted neither wrongfully nor in the course of operating the business of the debtor so as to attempt to improve the position of the general creditors. He intended only to liquidate an existing claim on which he believed in good faith the Jack/Wade estate was entitled to recover. The only difference between TMC and the existing

8

creditors of Jack/Wade is that TMC's debt was incurred after Jack/Wade filed for bankruptcy. If

Jack/Wade had sued TMC and lost one day before filing for bankruptcy, TMC would be an unsecured

creditor with no claim to any priority of payment for its award of attorney fees. *See In the Matter*

*of Al Copeland Enterprises*, 991 F.2d 233, 240 (5th Cir. 1993) (granting administrative expense

priority under *Reading* and 503(b)(1)(A) to only the portion of the debt which accrued post-petition).

The Court does not find that this fortuity of timing, standing alone, creates a principled basis on which

to make an exception to the rule of equal distribution among creditors.[4]

---

[4] We do not hold that a claimant must necessarily show a wrongful act committed in the course of a trustee's operation of a business in an attempt to improve the position of the existing creditors in order to obtain administrative expense priority under the *Reading* exception. We simply hold that, in this case, fairness does not compel the granting of administrative priority to TMC's claim for attorney fees. The driving force behind the Supreme Court's decision in *Reading* was the great injustice that would result to the claimant if it were denied its right to recover its fire damages; the real result of forcing it to collect a pro rata share of the estate with the existing creditors. Such compelling facts are not present in the instant case.

In *Reading*, the claimant's damages stemmed from a wrongful and unilateral act of the receiver and the claimant had no reason to anticipate either the bankruptcy or the negligence of the receiver. *See Reading Company v. Brown*, 391 U.S. 471, 477 (1968) (noting that "[p]etitioner suffered grave financial injury from what is here agreed to have been the negligence of the receiver and a workman"). TMC's damages, however, did not stem from any act by the trustee that could be considered either as wrongful or as unilateral as that which the Court considered in *Reading*. TMC chose to deal with Jack/Wade prior to the bankruptcy and voluntarily entered into the contract on which the trustee based his lawsuit. We admit that TMC was likely unaware that Jack/Wade would be unable to meet its financial obligations. Contracting parties, however, are expected to understand the risks associated with making agreements with others. The degree of "innocence" which contributed to the extreme injustice that would have resulted in *Reading* does not seem to be present in the present case. *See id*. at 483 (noting that existing creditors should not "be allowed to attempt to escape [their] dilemma at the risk of imposing it on others equally innocent"). *See also In re Hemingway Transport, Inc.*, 954 F.2d 1, 7 (1st Cir. 1992) (asserting that "[a] chapter 7 trustee's lawsuit may indeed impose burdensome litigation expense upon successful and unsuccessful defendants alike, yet its *prepetition* genesis ultimately distinguishes it from the *postpetition* losses accorded priority in *Reading*") (emphasis in original).

We also note that the claimant in *Reading* suffered a real and generally compensable injury: actual damages from the tortious conduct of the receiver. *See id*. at 473-74. TMC, on the other hand, seeks redress from attorney fees it incurred in defending a lawsuit brought in good faith by the trustee. The general rule in American lawsuits is that, absent a finding of bad faith, each party bear its own costs and expenses. *See Vaughan v. Atkinson*, 369 U.S. 527 (1962) (holding that the existence of bad faith can except a lawsuit from the "American rule" that each party is to bear its own costs in litigation). The only reason that TMC is able to claim its attorney fees as damages is because of the contractual provision. We cannot equate the injustice that would have resulted to the fire damage victim in *Reading* had it been denied full recovery of its damages with that resulting to TMC in being denied full recovery of its contractual attorney fees and costs.

The Court recognizes that the trustee in the instant case, made a decision to act in manner that would cause a third party to incur expense.[5]  Unlike the actions of the *Reading* receiver, however, the actions of the trustee were taken in the course of responsibly carrying out the duties of his position.  In a chapter 7 bankruptcy, the trustee is expected to identify and liquidate all existing claims on which the trustee has a good faith belief the estate is entitled to recover.  *See Watkins v. Sedberry*, 261 U.S. 571, 576 (1923) (noting that"[i]t was the duty of the trustee to employ counsel to bring suit to recover the property belonging to the bankrupt").  To penalize the estate when the trustee faithfully carries out these duties seriously undermines the incentive structure established by the bankruptcy code.[6]

We recognize that we have strictly construed the *Reading* exception.  The limits we have placed on its application are not, however, without support in neighboring circuits.[7]  Further, our

---

[5] The trustee sued TMC knowing that TMC would incur financial injury through its payment of attorney fees in defending the lawsuit .  Further,  the trustee knew that, in reality, the prevailing party provision of the contract he sued upon would have force only if TMC lost the lawsuit because Jack/Wade was already insolvent.  We admit that this reality places Jack/Wade at an unfair advantage with relation to TMC, but all of Jack/Wade's creditors are disadvantaged in that manner; that is the nature of bankruptcy.  Because this imbalance exists between TMC and Jack/Wade – not between TMC and the existing creditors of Jack/Wade, –  prioritizing TMC's claim ahead of those existing creditors does not remedy the unfairness of that situation.

[6]  We note that no similar penalty to unsecured creditors normally results from a trustee's good faith prosecution of a claim.  The Court is concerned, therefore, with the possibility that, by prioritizing TMC's attorney fee award in this case, we would effectively be creating a way for parties to contract around the provisions of the bankruptcy code.

[7] The First Circuit in *In re Hemingway Transport, Inc.*, 954 F.2d 1 (1st Cir. 1992) rejected a claim for administrative expense priority on a set of facts nearly identical to those presented in the instant lawsuit.  There, the bankruptcy trustee sued a third party based on a pre-petition lease agreement which contained a prevailing party attorney fee clause.  *See id.* at 4.  The third party successfully defended the suit and petitioned the bankruptcy court to grant administrative expense priority to its attorney fee award under the principles of *Reading*.  *See id.*  The First Circuit, in denying administrative priority, noted that the "postpetition *operation* of the [debtor's] business under chapter 11 in no manner caused or contributed to the attorney fees incurred . . . in resisting the chapter 7 trustee's third party action."  *Id.* at 6 (emphasis in original).  While the court declined to establish a rule barring the application of *Reading* in any chapter 7 liquidation proceeding, it did note that the award's "*prepetition* genesis ultimately distinguishes it from the *postpetition* losses accorded priority in *Reading.*"  *Id.* at 7 (emphasis in original).

holding today is fully consistent with prior Fifth Circuit applications of *Reading*.[8]  For the foregoing

reasons, we affirm the judgment of the district court denying administrative priority treatment of

TMC's attorney fee award.

*Affirmed*

[8] The *Reading* exception to the normal section 503(b)(1)(A) rule of administrative priority has been applied in only two cases in the Fifth Circuit.  Both those cases, however, involved a wrongful act by the trustee or debtor-in-possession committed in the course of a chapter 11 reorganization.  In *In the Matter of Al Copeland Enterprises*, 991 F.2d 233 (5th Cir. 1993), this Court granted administrative expense priority to an award of interest on sales taxes wrongfully withheld by the trustee of chapter 11 bankruptcy estate.  In *In the Matter of H.L.S. Energy Co., Inc.*, 151 F.3d 434 (5th Cir. 1998), this Court did not rely on *Reading* because we found that the state's actions to plug wells that the trustee had an obligation to plug "benefitted" the estate for purposes of granting section 503(b)(1)(A) administrative expense priority to the state's costs.  We cited *Reading*, however, because the trustee, in its operation of the debtor's estate under chapter 11, violated the law and the state was damaged in course of attempting to remedy that violation. *See id.* at 436.